UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


GREGORY HAYES,                        )
                                      )
            Petitioner,               )
                                      )
        v.                            )        No. 4:06 CV 557 DJS
                                      )                        DDN
MICHAEL BOWERSOX,                     )
                                      )
            Respondent.               )


**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

     This action is before the court upon the petition of Missouri state
prisoner Gregory Hayes for a writ of habeas corpus pursuant to 28 U.S.C.
§ 2254.  (Doc. 1.)  The petition was referred to the undersigned United
States Magistrate Judge for review and a recommended disposition pursuant
to 28 U.S.C. § 636(b).  For the reasons set forth below, the undersigned
recommends that the petition for a writ of habeas corpus be denied.


## I.  BACKGROUND

     On April 10, 2002, petitioner Gregory Hayes was convicted by a jury
in the Circuit Court of the City of St. Louis, Missouri, of robbery in
the first degree.  (Doc. 8, Ex. A at 44-46.)  Petitioner was sentenced
to 15 years imprisonment.  (Id. at 54-56.)  Petitioner filed a direct
appeal, and the Missouri Court of Appeals affirmed.  (Id. Ex. E.)  See
State of Missouri v. Hayes, 113 S.W.3d 222 (Mo. App. 2003).

     Thereafter, petitioner moved for post-conviction relief under
Missouri Supreme Court Rule 29.15.  (Id. Ex. F at 3-11.)  The circuit
court denied relief without a hearing, and the Missouri Court of Appeals
affirmed.  (Id. Ex. I.)  See Hayes v. State of Missouri, 158 S.W.3d 266
(Mo. App. 2005).

     In its decision affirming the denial of post-conviction relief,
after viewing the evidence in the light most favorable to the verdict of
the jury, the Missouri Court of Appeals described the following facts as
proven at trial:

At around three a.m. on October 28, 2000, Victim emerge from the Delmar Lounge, a jazz bar and lounge in the City of St. Louis. Leaving by the front door, Victim walked to his car in the parking lot with his keys in his hand. There was no one else around. [Petitioner] appeared and approached Victim, asking him if he wanted to purchase some "crack." Victim declined [petitioner's] offer and continued walking. When Victim arrived at his car, [petitioner] "came up from behind," pushed him, and struck Victim in the back, near his kidneys, with a weapon two times.

[Petitioner] told Victim to give him his money. While still against the side of the car, Victim said to take the wallet in his back pocket which contained money. [Petitioner] pulled out the wallet and looked through it. As [petitioner] then went around the front of the car, Victim "jumped" into the car in an effort to escape.

Before Victim could lock him out, [petitioner] dove into the car and punched Victim in the face, knocking him unconscious. When he regained consciousness, Victim was still in the car, "slumped over the column." [Petitioner] -- who was now outside of the car -- told Victim that he had a gun, and ordered him to get out of the car or he would shoot him. Victim quickly got out of the car, threw his car keys onto the seat, held up his hands, and said, "don't kill me." Victim watched [petitioner] drive away. At trial, Victim identified [petitioner] as the assailant.

Victim then returned to the bar. Employees of the bar called the City of St. Louis police department and, when they arrived, the officers questioned Victim about the robbery. The police asked if Victim needed to go to the hospital. He declined because, at the time, Victim only felt pain from the injury where [petitioner] struck him in the mouth and chipped his tooth. Later that morning, Victim rubbed his side to find blood sticking to his side and shirt. He lifted his shirt to find two "puncture wounds" at the area where [petitioner] had struck him in the side. Victim went to the hospital where he was told "the puncture would . . . broke the skin but didn't hit an internal organs."

Around one p.m. that same day, University City Police Officer Seppi Whaley saw [petitioner] selling CDS in the Delmar loop area. As [petitioner] was soliciting without a business license, Officer Whaley arrested him and, in conducting a search incident to arrest, found a "small folding pocket knife" on him. At trial, this knife was admitted into evidence over objection.

After arresting and searching [petitioner], Officer Whaley took him to the University City Police Department.

When Detective Jackson arrived at the station, he spoke with [petitioner] and read him his Miranda rights. [Petitioner] told Detective Jackson that he had only been a "lookout" for the robbery, and said he had got the CDS he had been selling on the street from Victim's stolen car.

[Petitioner] then accompanied Detective Jackson and Officer Whaley in a car to where the crime occurred. When they arrived at the Delmar Lounge, [petitioner] showed the officers the general area where he stood behind the building when Victim was attacked. . . .

During the drive, [petitioner] said that he was only a "witness" to the crime. According to Detective Whaley, [petitioner] claimed to have seen Victim being assaulted, then "ran after the two guys, Little Man and Al, to see what they got and then he was just given" the CDS. Later, after they had returned to the station, [petitioner] made a written statement which read as follows:

> I, [petitioner]], want to make the following statement: I was walking down East Gate to the Shell station to get some cigs around 2 a.m. or 2:30 a.m., when I seen Al at the Delmar Lounge. He was standing by the parking lot when I approached him. He conveyed to me that him and Little Man were getting ready to jack this white guy, as we were talking I observed Little Man strike the guy. As I did so Little Man coming out of the parking lot with a white four-door car. We met around the corner and that's when I got the CDS. And Little Man took the phone and CD player. I am willing to give back the CDS to the owner, and I'm sorry if I caused any pain.

(Doc. 8, Ex. I at 2-4.)


## II. PETITIONER'S GROUNDS FOR HABEAS RELIEF

Petitioner claims two grounds for relief:

(1) he received ineffective assistance of counsel when his lawyer failed to request instructions on receiving stolen property; and

(2) he received ineffective assistance of counsel when his lawyer failed to raise on appeal that the trial court erred in denying his motion to suppress and overruling his objection to the victim's in court identification of petitioner as the robber.

Both grounds were raised in petitioner's motion for post-conviction relief and were presented to the Missouri circuit court and the court of

appeals.  Respondent argues that these grounds are without merit and that the petition should thus be denied.

### III.  STANDARD OF REVIEW

Habeas relief may not be granted by a federal court on a claim that has been decided on the merits in state court unless that adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is "contrary to clearly" established law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or ... decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000)(plurality opinion).  A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

### IV.  DISCUSSION

**GROUND 1**

In Ground 1, petitioner asserts that trial counsel provided constitutionally ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments by not requesting an instruction on receiving stolen property.

Post-conviction relief may be afforded a prisoner if he received constitutionally ineffective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 684 (1984).  To prove ineffective assistance of counsel, petitioner must show: (1) his counsel's performance was objectively unreasonable, and (2) there was a "reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Petitioner's first ground fails because the Missouri Court of Appeals held that under Missouri law receiving stolen property is not a lesser included offense of robbery in the first degree. (Doc. 8, Ex. I at 6-7.) Even if the Court of Appeals had erred on this point, it would be irrelevant for purposes of habeas corpus because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Had petitioner's counsel asked for an instruction on receiving stolen property, it would likely have been denied, and its denial would not have violated clearly established federal law. Dickerson v. Dormire, 2 Fed. Appx. 695, 2001 WL 266967 (8th Cir. 2001)("Supreme Court has never held that due process requires the giving of lesser-included-offense instructions in noncapital cases").

Given that any request for instruction on receiving stolen property would have been unsuccessful, the failure of petitioner's counsel to ask for such an instruction was not objectively unreasonable. The Missouri Court of Appeals reasonably rejected petitioner's first ground for ineffective assistance.

Ground 1 is without merit.


**GROUND 2**

In Ground 2, petitioner claims he received constitutionally ineffective assistance of counsel when his appellate counsel failed to argue on appeal that the trial court erred in denying his motion to suppress and in overruling his objection to the victim's in-court identification of him as the robber. (Doc. 1 Supp. at 2-4.) Petitioner argues that the trial court erred in allowing the in-court identification because (1) there was "no valid out-of-court identification of the defendant by the victim; " and (2) the victim had no "personal knowledge" of the identity of the robber.

This ground fails because, as noted by the Missouri Court of Appeals, these arguments would have been unsuccessful. (Doc. 8, Ex. I

at 8-10.)  The court of appeals held that the victim's inability to make a positive out-of-court determination of petitioner did not make the in-court identification inadmissible and that the victim had personal knowledge of the identity of the robber because he testified that he was able to see his face when he drove off in the stolen car.  (Id. Ex. I at 8-9.)

Once again, even if the Court of Appeals had erred in applying Missouri law, it would be irrelevant for purposes of deciding entitlement to habeas corpus relief.  Estelle v. McGuire, 502 U.S. at 67-68.

Given that appealing the trial court's decision to deny the motion to suppress and the objection to the in-court identification of petitioner was highly unlikely to succeed, the performance of petitioner's counsel was not objectively unreasonable.  The Court of Appeals reasonably affirmed the denial of petitioner's second specification of constitutionally ineffective assistance of counsel.

## VI.  RECOMMENDATION

For the reasons stated above,

**IT IS HEREBY RECOMMENDED** that the petition of Gregory Hayes for a writ of habeas corpus be denied.

The parties are advised they have ten days in which to file written objections to this Report and Recommendation.  The failure to file timely, written objections may waive the right to appeal issues of fact.


    /S/   David D. Noce
UNITED STATES MAGISTRATE JUDGE




Signed on September 10, 2008.